In the Matter of NIAGARA MOHAWK POWER CORPORATION, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Appellant.

Third Department, November 10, 1976

*Peter H. Schiff* and *Howard J. Read* for appellant.

*LeBoeuf, Lamb, Leiby & MacRae (Halcyon G. Skinner* and *Andrew Gansberg* of counsel), for respondent.

SWEENEY, J. P. The facts are not in dispute. Petitioner is a privately owned utility corporation serving customers with gas and electricity or electricity alone. In April, 1974 it instituted rate proceedings before the commission which resulted in an order issued February 26, 1975 granting an increase in its rates by $92,250,000 annually in revenues. The opinion noted that there was a possibility of tax refunds resulting from the company's retroactive adoption of minimum guideline lives in computing depreciation for tax purposes during the period 1966-1969. Accordingly, Niagara Mohawk was ordered to notify the commission when the refunds were received. By letter dated March 21, 1975 Niagara Mohawk notified the commission that it was entitled to receive $22.4 million in tax refunds

while being found liable for a deficiency of $6 million. The commission determined that in fairness Niagara Mohawk be reimbursed for the deficiency.

By order issued September 25, 1975 the commission directed that 90% of the refunds be flowed through to the ratepayers with the rest to be retained by the company. After reconsideration the commission reconfirmed its prior decision. The instant article 78 proceeding was commenced and Special Term determined that the commission was without authority to direct the flow-through of Federal income tax refunds to Niagara Mohawk ratepayers. This appeal ensued.

A resolution of this controversy requires us to determine whether the Public Service Commission has the authority under the Public Service Law to order a utility to flow-through to its ratepayers Federal income tax refunds received subsequent to the tax years to which the refunds related. We find no New York case treating this precise issue.

Initially, we must determine whether the flow-through ordered by the Public Service Commission is, in fact, retroactive rate making. We agree with Special Term that it is. The commission refers to it as "entitlement of present receipt of monies". Despite this semantical distinction, what the commission is attempting is a return of this subsequently acquired money by Niagara Mohawk to its customers. This sum represents the overpayment of Federal taxes where the larger amount was utilized in determining the previous rates. The return of the money to the customers would in effect reduce the cost of utilities to them. In other words, it would lower the rates paid. Consequently, what is accomplished is a reduction of past rates. Admittedly, the rates for those years were in all respects proper at the time they were made.

Although we sympathize with appellant's objective, we may not approve it unless it is authorized by existing law. It is well settled that the commission may exercise only such powers as are conferred upon it by the Legislature *(Matter of Village of Boonville v Maltbie,* 272 NY 40, 47), or which are incidental to, such power *(Kovarsky v Brooklyn Union Gas Co.,* 279 NY 304), or necessarily implied therefrom *(People ex rel. N. Y. Rys. Co. v Public Service Comm.,* 223 NY 373). We find no statutory power, either express or implied, permitting a refund under these circumstances. On the contrary, an examination of the Public Service Law demonstrates that the Legislature has empowered the commission to prescribe refunds to

gas and electric customers in only two specific instances, not relevant here (Public Service Law, § 66, subd 18; § 113). Since the Legislature carefully authorized refunds in two defined instances, it is reasonable and logical to conclude that no general authority to direct refunds was intended. Furthermore, a perusal of case law reveals that our courts have held that the commission does not have the general power to order a utility to make reparation or refunds to its customers (*Purcell v New York Cent. R. R. Co.,* 268 NY 164, cert den 296 US 545; *Murphy v New York Cent. R. R. Co.,* 225 NY 548). The words reparation, refund and rebate all connote substantially the same thing. Rate making is a prospective and not a retrospective process.

We deem it necessary to distinguish *Texas Eastern Transmission Corp. v Federal Power Comm.* (414 F2d 344, cert den 398 US 928) relied upon by the commission as precedent for authorization to direct a utility to make a refund. Suffice it to say that Texas was involved with a different statute specifically empowering the commission to require a utility to refund.

The present result might initially appear unfair and unjust to the ratepayer and unduly generous to Niagara Mohawk. On reflection and analysis, however, such is not the case. As we have stated, rate making is prospective in nature. Consequently, the proper approach for the commission is to consider this acquired money when a future rate adjustment is requested. Such a procedure would fully protect the ratepayer from any unjust and unreasonable rates. While we have carefully considered all the other arguments urged by appellant, in view of the result reached, it is unnecessary to comment further.

The judgment should be affirmed, without costs.

KANE, MAHONEY, LARKIN and HERLIHY, JJ., concur.

Judgment affirmed, without costs.