OPINION OF THE COURT
Harold J. Hughes, J.
In this CPLR article 78 proceeding petitioners, private schools serving handicapped children in the New York City metropolitan area, seek a judgment setting aside the determination of respondents establishing the allowable tuition rate which petitioners may charge for the instruction of handicapped children during the 1979-1980 school year upon the grounds that: (1) the policy of respondents in establishing a ceiling for salary increases for teaching staffs in nonpublic schools is arbitrary and capricious in that it prevents petitioners from recovering the actual, reasonable and necessary costs of instructional services; (2) the ceiling on teach *270 ing staff salary increases is arbitrary and capricious in that it was established without undertaking any study or analysis of actual salary scales in private schools in comparison with public schools; (3) the teacher salary ceiling policy arbitrarily interferes with petitioners’ right to obtain reimbursement for all actual reasonable salary costs established by contractual agreement with the New York City Board of Education and other local school districts; (4) the salary ceiling policy of respondents is arbitrary and capricious in that it was not arrived at pursuant to properly enacted rules and regulations as required by section 4405 (subd 3, par d) of the Education Law; (5) respondents failed to notify petitioners of the tuition rates for the 1979-1980 school year within the time required by law;' (6) respondents’ teacher salary ceilings are arbitrary and capricious in that they will cause the bankruptcy of many of petitioners, thereby depriving substantial numbers of children with handicapping conditions from receiving educational services they are guaranteed by law; and (7) the Commissioner of Education is improperly allowing the Commissioner of Social Services to establish tuition rates for the Summit School, Inc., in violation of the duty imposed upon him by section 4405 of the Education Law.
Sections 4401 and 4402 of the Education Law authorize school districts to enter into contracts with private schools to provide educational services and programs to handicapped children. Section 4405 (subd 3, par d) of the Education Law provides: “The commissioner of education shall, annually, determine the allowable tuition rate for each private school for the purposes of this subdivision pursuant to his rules and regulations. Such allowable tuition rate shall be the maximum amount which a private school may charge for the instruction of a pupil for whom a school district has contracted with such school. These rates shall not become effective until approved by the director of the budget.”
Subdivision 5 of section 4401 of the Education Law defines “Tuition” to “mean the per pupil cost of all instructional services, supplies and equipment, the operation of instructional facilities and allocable debt service for the *271 instructional facilities, as determined by the commissioner.” Subdivision 5 of section 4403 of the Education Law provides that the Education Department shall have the power and it shall be its duty “To require such financial information as may be necessary from and to audit any public or non-public school receiving any public moneys pursuant to any provision of the education law as the commissioner deems appropriate.”
Under the foregoing statutory scheme, the Commissioner of Education during March of 1979 required petitioners to submit budgetary requests for the establishment of tuition for the 1979-1980 school year. During November of 1979 petitioner schools were notified that their requested tuition rates for the 1979-1980 school year had been reduced, and that this reduction was due to a staff salary increase ceiling of 4.5% which had been imposed upon teacher salary scales. Petitioners contended that the rates they paid their teachers were substantially below that paid by public schools and that with a dwindling supply of qualified teachers available, it was necessary for them to grant their teaching staffs salary increases substantially beyond the 4.5% permitted by respondents. Petitioners took an administrative appeal during the course of which respondents agreed to raise the ceiling on salary increases to about 8%. This arrangement was not satisfactory to petitioners, resulting in the instant litigation.
The petitioners’ position is that the Commissioner of Education is charged by law with the duty to determine the allowable tuition rate for private schools and that tuition is defined in the statute to mean “the per pupil cost of all instructional services, supplies and equipment” (italics supplied). Petitioners contend that under this statutory mandate the Commissioner of Education is without authority to establish an arbitrary ceiling upon teacher salary increases which would prevent private schools from recouping the cost of “all instructional services”. Petitioners contend that the Commissioner of Education has failed to establish an allowable tuition rate for each private school upon an individual basis as required by law and has instead resorted to an arbitrary salary increase ceiling in order to *272 save the taxpayers and school districts money. Petitioners argue that the commissioner has failed to enact appropriate rules and regulations by which to determine the allowable tuition rate. Finally, petitioners argue that the salary increase ceiling established by respondents is irrational in that it allows a new teacher without experience to be hired for the 1979-1980 school year at a greater salary than would be permitted to be paid to a teacher retained from the 1978-1979 school year and given a salary increase permitted under the commissioner’s salary increase ceiling.
Respondents assert that it is the duty of the commissioner to determine reasonable tuition rates, and that duty imports an obligation to establish a reasonable ceiling upon teachers’ salary increases. Respondents allege that in performing his duty the Commissioner of Education relied upon statistics compiled by the Public Employment Relations Board (PERB) research office concerning teacher salary increases negotiated in public schools for the years 1978-1979, which showed an average teacher salary increase in the New York City metropolitan area to be 4.5%. The commissioner contends that in relying upon these statistics, and in showing flexibility by increasing the teacher salary increase ceiling to approximately 8 % during the course of negotiations held during the administrative appeal, he has acted in a reasonable manner.
At the outset, the court disagrees with the petitioners’ position that their allowable tuition rate must include the cost of all salary increases negotiated between the private schools and their employees, without any discretion invested in the Commissioner of Education to limit such salary increases. The statute implies that the cost of instructional services included in computing the allowable tuition rate must be reasonable and necessary and the determination thereof is specifically vested in the Commissioner of Education (Education Law, § 4401, subd 5). The Legislature has given the Commissioner of Education broad discretion in determining the allowable tuition rate for the education of handicapped children in nonpublic schools (Dubendorf v New York State Educ. Dept., 97 Misc 2d 382, 389, 390, mod 71 AD2d 837, opp dsmd 48 NY2d 829). This dele *273 gation is necessary due to the complexity of this area of legislation and the special expertise and experience of the Commissioner and Department of Education in these matters (supra). Determinations of the Commissioner of Education in this special area of expertise should not be lightly supplanted by a court. The general rule regarding the proper function of a court in reviewing rates set by an administrative agency was stated by Mr. Justice Sweeney in Matter of Spring Val. Water Co. v Public Serv. Comm. of State of N.Y. (71 AD2d 55, 56) as follows: “Our scope of review in these matters is very limited, the question being whether there is a rational basis for the commission’s finding that the rates in question are just and reasonable * * * The commission’s determination may only be set aside when it is shown to be without any rational basis or without any reasonable support in the record”.
The foregoing standard is the one to be applied by the court in reviewing challenges to the allowable tuition rate for private schools established by the Commissioner of Education under section 4405 of the Education Law. Under that standard the determination of the commissioner to impose a 4.5% ceiling on teacher salary increases is not arbitrary and capricious. The reliance by the commissioner upon statistical studies showing that in the public school realm the average teacher salary increase during the 1978-1979 school year was 4.5% was reasonable. The 4.5% guideline as used by the commissioner is neither inflexible nor arbitrary as is clearly demonstrated by the fact that in the course of negotiations with petitioners the commissioner agreed to raise the ceiling on the salary increases to about 8%. This court holds the policy of placing a flexible ceiling upon teacher staff salary increases in the establishment of allowable tuition rates pursuant to section 4405 (subd 3, par d) of the Education Law is neither arbitrary nor capricious.
Turning to the other points raised by petitioners, the failure of the Commissioner of Education to establish comprehensive rules and regulations as required by section 4405 (subd 3, par d) of the Education Law is deplorable, but not fatal, in that “Section 4401 of the Education Law clearly *274 gives the commissioner the power to * * * determine tuition costs, with or without regulations” (Dubendorf v New York State Educ. Dept., 97 Misc 2d 382, 395, supra). Likewise, the failure of respondents to comply with 8 NYCRR 200.13 (b) is not to be condoned, but will not serve as a basis for annulling the allowable tuition rate set by the commissioner (Dubendorf v New York State Educ. Dept., 97 Misc 2d 382, 395, 396, supra). The relief requested concerning the Summit School is premature in that the commissioner has not yet acted upon the Summit School’s request that the Commissioner of Education, rather than the Commissioner of Social Services, determine its allowable tuition rate, and, thus, there is no final administrative determination on that issue. The other points raised by petitioners are without merit.
The petition shall be dismissed, without costs.